T.C. Memo. 2017-77

UNITED STATES TAX COURT

ESTATE OF HUNG-LIANG LYNN LIN, DECEASED, JEFFREY S. LIN,
ADMINISTRATOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 211-15.                    Filed May 8, 2017.

Hung-Liang Lynn Lin,[1] pro se.

Patrick F. Gallagher, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, Judge:  Respondent determined a deficiency of $11,711 in

petitioner's Federal income tax and an accuracy-related penalty pursuant to section

---

[1]Hung-Liang Lynn Lin died after trial of this case, and the caption was
changed by order dated February 17, 2017, pursuant to Rule 63(a).  Hereafter, for
ease, references to petitioner shall denote Hung-Liang Lynn Lin.

[*2] 6662(a) of $2,342 for the 2012 taxable year.[2]  The issues for decision are:  (1) whether petitioner was required to report as income $56,889.95 received from a retirement account during 2012 and (2) whether petitioner is liable for the accuracy-related penalty.

## FINDINGS OF FACT

Petitioner resided in Rhode Island at the time the petition was filed with the Court.

Petitioner began working full time in 1978.  He studied geophysics and received a Ph.D. from the Colorado School of Mines.  During the 1980s he was working for Raytheon in Oklahoma.  In 1987 he moved back to Colorado, where he met an agent for Paine Webber and opened two investment accounts.  Over the years he contributed $24,000 to his investment accounts, which it appears were at all times treated as deductible contributions to an individual retirement account (IRA).

On July 9, 2007, the balances in petitioner's accounts were transferred to OppenheimerFunds, where an account was opened as a rollover IRA.  His account remained with OppenheimerFunds until 2012.

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]**   On February 10, 2012, a representative for OppenheimerFunds secured petitioner's signed authorization and caused his OppenheimerFunds account to be transferred to ProEquities, where an account was opened as a rollover IRA. Thereafter, petitioner became angry with the representative because he believed the representative was "doing [] things" he did not know about and was charging a commission. Petitioner requested that his ProEquities account be closed; on March 29, 2012, he executed an IRA distribution request form to withdraw the $56,889.95 balance in the account. The form also reflects his election not to have any Federal or State income tax withheld from the distribution and for delivery of the funds via wire transfer to his bank account at Bank of America.

There is no dispute that petitioner received these funds. At the close of 2012 petitioner was over 59½ but under 70½ years of age.

ProEquities sent to the Internal Revenue Service and to petitioner a 2012 Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reporting the $56,889.95 distribution to petitioner as a normal, taxable distribution. The form also reflected that no Federal or State income tax was withheld. Petitioner prepared his own Federal income tax return for 2012, but he did not report the distribution.

**[\*4]** Relying on the ProEquities Form 1099-R, respondent sent a notice of deficiency to petitioner on December 22, 2014, determining that the entire amount of the reported distribution was taxable and that he was liable for the substantial understatement of income tax penalty under section 6662(a) and (b)(2). On January 5, 2015, petitioner timely petitioned this Court for redetermination of the deficiency and the penalty.

OPINION

I.    Taxability of Retirement Distribution

Section 408(d)(1) provides that amounts paid or distributed out of an individual retirement plan shall be included in gross income by the payee or distributee, with exceptions not applicable here. The taxability of distributions coordinates with the exemption from tax of earnings in the account during its existence. See sec. 408(e)(1). Because petitioner was over 59½ and under 70½ at the close of 2012, we are not here concerned with an early distribution subject to section 72(t) or a required minimum distribution under sections 408(a)(6) and 401(a)(9).

Petitioner conceded at trial that the $24,000 he contributed to his IRA and included in the 2012 distribution is taxable. Implicitly he acknowledged that his contributions to the account were deducted during the years that they were made,

[*5] pursuant to section 219(a). However, he questioned the taxability of the balance and indicated he was willing to repay that amount to a new IRA he could open (or to an IRA he had recently opened with Bank of America).[3] His argument is premised on a representative's transfer of funds as a rollover into an IRA without his knowledge or consent. However, the IRA records of petitioner that are in evidence are consistent in treating his funds as invested through an IRA and indicate that the original contributions and the earnings on them were rolled over from one institution to another. In particular, petitioner signed papers acknowledging the IRA rollover from OppenheimerFunds to ProEquities in 2012.

Although none of petitioner's Federal income tax returns for earlier years are in evidence, his original contributions were apparently deducted, and earnings on his contributions to an IRA normally would not have been taxed until withdrawn. Thus the statutory provisions require that the full amount of the distribution be taxed during the year that he received it.

---

[3]Petitioner also testified that after receipt of the funds, he sent some of the funds to his son to pay the balance on a student loan and that some of it remained in a checking account. Subsequent use of the distribution is irrelevant in this case.

**[\*6]** II.     Accuracy-Related Penalty Under Section 6662(a)

We now address whether petitioner is liable under section 6662(a) and (b)(2) for an accuracy-related penalty on an underpayment due to a substantial understatement of income tax.

Section 6662(a) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return if, as provided by section 6662(b)(2), the underpayment is attributable to any substantial understatement of income tax.  The term "substantial understatement" means an understatement of income tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).  The Commissioner bears the burden of production regarding a taxpayer's liability for the accuracy-related penalty and thus is required to come forward with sufficient evidence indicating that imposition of the penalty is appropriate.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner meets his burden of production, the taxpayer bears the burden of proving, through persuasive evidence, that the Commissioner's penalty determination is incorrect.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Higbee v. Commissioner, 116 T.C. at 447.  Respondent has discharged his burden of production by providing sufficient evidence showing that petitioner's

**[\*7]** understatement of income tax for 2012 exceeds the greater of 10% of the tax that was required to be shown on the 2012 return or $5,000.

Application of the accuracy-related penalty may be avoided with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 446-447. The determination of whether the taxpayer had reasonable cause and acted in good faith depends upon the pertinent facts and circumstances of a particular case. Sec. 1.6664-4(b)(1), Income Tax Regs. We consider, among other factors, the experience, education, and sophistication of the taxpayer; however, the principal consideration is the extent of the taxpayer's efforts to assess the proper tax liability. Id.; see also Higbee v. Commissioner, 116 T.C. at 448. Taking into consideration the taxpayer's experience, education, and sophistication, an honest misunderstanding of fact or law may indicate reasonable cause and good faith. Higbee v. Commissioner, 116 T.C. at 449 (citing Remy v. Commissioner, T.C. Memo. 1997-72). In addition, reliance on professional advice may indicate reasonable cause and good faith if, in the light of all the facts and circumstances, such reliance was reasonable and the taxpayer acted in good faith. Id. at 448-449.

**[*8]** Petitioner at trial appeared sincere but confused about the taxability of the distribution he admitted receiving in 2012 although he did not deny receipt of the Form 1099-R showing that the distribution was reported as taxable by ProEquities. He did not consult a tax professional and simply omitted the distribution from his self-prepared return. We cannot find in the record either evidence of a cognizable effort to assess his proper tax liability or reasonable cause for the error. Because the underpayment was by definition substantial, we will sustain the penalty.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.